**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:26-CR-29-CHB-MAS-2**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **PLEA AGREEMENT**

**JUAN VALTIERRA-SANCHEZ** **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Indictment, which charges conspiracy to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. § 846. The Defendant also agrees to forfeiture of the items set forth in the forfeiture allegation. Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Count 4 of the Indictment.

2. The essential elements of Count 1 are as follows:

(a) First, that two or more persons conspired, or agreed, to distribute fentanyl, a Schedule II controlled substance.

(b) Second, that the Defendant knew of the conspiracy and its objects, aims, and goals.

(c) Third, that the Defendant joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of distribution of fentanyl, and

(d) Fourth, that the quantity of fentanyl attributable to the Defendant as a result of his own conduct or the conduct of other conspirators that was reasonably foreseeable to him was 400 grams or more.

3. As to Count 1, the United States could prove the following facts which establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) In December 2025, the Defendant, Juan VALTIERRA Sanchez, agreed to assist at least one other conspirator in that person's distribution or possession with intent to distribute a controlled substance. On December 10, 2025, DEA agents were conducting physical and electronic surveillance of a coconspirator in Lexington. Agents followed the coconspirator and VALTIERRA as they traveled to Colombus, Ohio, to obtain a controlled substance. In Ohio, agents witnessed the transfer of a black backpack to a coconspirator and VALTIERRA. Agents also watched as the coconspirator placed the bag in the trunk and both VALTIERRA and the coconspirator appeared to be moving objects around in the trunk.

(b) Agents requested the assistance of state police to conduct a traffic stop of the conspirators upon their return to the Eastern District of Kentucky. Kentucky State Police officers stopped the conspirators in a red Mazda M6 in Scott County, Kentucky. VALTIERRA was driving the vehicle with the coconspirator in the passenger seat. As the officer approached the vehicle, VALTIERRA was observed reaching around in the driver's side area of the vehicle. The officer observed two rectangular objects in plain view on the rear floorboard, behind the passenger's seat. The objects appeared to be kilograms of an unknown controlled substance. Officers found and seized a total of six kilograms of suspected fentanyl. Two were found on the backseat floorboard and four in the trunk. The DEA Laboratory confirmed that the substances were fentanyl, a Schedule II controlled substance. Item 2 was 2,003 grams of fentanyl and Item 3 was 3,998 grams of fentanyl, for a total of 6,001 grams (or just over 6 kilograms). VALTIERRA admits

that he agreed to assist at least one other person to obtain a controlled substance in Ohio for that coconspirator to distribute it to others in the Eastern District of Kentucky.

4. The statutory punishment for Count 1 is imprisonment for not less than 10 years and not more than life, a fine of not more than $10,000,000, and a term of supervised release of at least 5 years. A mandatory special assessment of $100 per count applies, and the Defendant will pay this $100 assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) The United States Sentencing Guidelines (U.S.S.G.) 2026 Manual will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all the facts set forth in paragraph three and the provided discovery materials.

(c) Pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(3), the base offense level for Count 1 is 31 because the offense level based on drug quantity would be 34 (at least 4 kilograms of fentanyl but less than 12 kilograms) but the Defendant is entitled to a mitigating role adjustment under U.S.S.G. § 3B1.2.

(d) Pursuant to U.S.S.G. § 2D1.1(b)(18), if the Defendant meets all the criteria at U.S.S.G. § 5C1.2 (1)-(5), then decrease the offense level by 2 levels pursuant to the safety valve provision.

(e) Pursuant to U.S.S.G. § 3B1.2(a), decrease the offense level by 4 levels because the Defendant was a minimal participant in any criminal activity.

(f) Pursuant to U.S.S.G. § 4C1.1(a), decrease the offense level by 2 levels as a zero-point offender.

(g) Pursuant to U.S.S.G. § 3E1.1(a) and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level pursuant to U.S.S.G. § 3E1.1(b) based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the higher of the advisory sentencing guidelines range as determined by the Court at sentencing or the statutory minimum sentence of 120 months. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. The Defendant understands that since he is not a United States citizen, he may be removed from the United States, denied citizenship, and denied admission to the United States in the future because of this conviction.

9. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offenses to which he is pleading guilty, as set forth in the forfeiture allegation of the indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees to take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including, but not limited to, executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees

that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant agrees to cooperate fully with the United States Attorney's Office and will make a full and complete financial disclosure. Within 30 days from his guilty plea, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation

or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

12. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

13. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant acknowledges that he understands this Agreement, that his attorney has explained it to him, and that his entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT U. S. ATTORNEY

Date: 8/24/26 By: [signature]
G. Todd Bradbury
Assistant United States Attorney

Date: 8/21/26 By: [signature]
Juan Valtierra Sanchez
Defendant

Date: 8/21/26 By: [signature]
Jeffrey C. Rager
Attorney for Defendant